UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | |
|---|---|
| DELIA HERNANDEZ DUQUE, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | No. 4:25-cv-00231-SEB-KMB |
| ) | |
| SCOTTY MAPLES, ) | |
| KRISTI NOEM, ) | |
| PAMELA BONDI, ) | |
| SAMUEL OLSON, ) | |
| TODD LYONS, ) | |
| ) | |
| Respondents. ) | |

## ORDER

On November 24, 2025, Petitioner Delia Hernandez Duque filed a petition for writ of habeas corpus under 28 U.S.C. § 2241, challenging the Department of Homeland Security's ("DHS") revocation of her Order of Supervision ("OSUP") and her subsequent civil detention in Clark County Jail. Dkt. 1. In addition to ordering Respondents to show cause why the relief sought by Petitioner should not be granted, on November 25, 2025, the Court granted Petitioner's motion for temporary restraining order to the limited extent that ". . . pursuant to the All Writs Act, 28 U.S.C. § 1651, the Court orders [that] Respondents shall not transfer Petitioner outside the jurisdiction of the United States or transfer her to any federal judicial district other than those in the States of Illinois, Indiana, or Wisconsin during the pendency of this habeas petition." Dkts. 8, 9. On December 1, 2025, Respondents notified the Court that Petitioner was transferred to Texas on November 24, 2025, and later deported to her native country of Guatemala on November 29, 2025. Dkt. 12. The Court subsequently ordered Respondents to show cause why contempt citations should not be entered against them. *See* dkts. 13, 14, 18. The parties replied by ensuring renewed

1

efforts to return Petitioner to this jurisdiction. The Respondents have recently notified the Court that Petitioner has been returned and is currently detained in Clark County Jail in Indiana. (Petitioner's motion to hold the Respondents in contempt, dkt. [25], is **denied as moot**.)

Now pending before the Court is Petitioner's habeas corpus petition seeking her immediate release from detention based on the government's failure to abide by its own process for revoking her OSUP. Dkt. 1. Respondents responded to the petition on December 5 and December 12, 2025, and Petitioner replied on December 17. *See* dkts. 16, 20, 23. The federal Respondents have supplemented their response by filing a notice and documentation establishing that Petitioner was served with a "Notice of Revocation of Release" on December 31, 2025. Dkt. 27-2.

For the reasons described below, the Court **grants** in part Petitioner's habeas petition, ordering the Respondents to **either immediately revoke Petitioner's OSUP under the prescribed regulatory and statutory process or release her from detention**.

## I. Background

We restate the material facts of the case before us:

Petitioner is a native of Guatemala. She entered the United States without inspection in 2007. Dkt. 1 ¶ 29. Approximately one year later, on November 20, 2008, Petitioner was served with a warrant for arrest and placed into removal proceedings. Dkt. 16-2 at 10–12. That same day, Petitioner was released on bond. *Id.* at 13. On November 4, 2010, an Immigration Judge denied Petitioner's application for asylum and a withholding of removal. *Id.* at 7. The Bureau of Immigration Appeals ("BIA") dismissed Petitioner's appeal on January 20, 2016, ordering Petitioner to voluntarily depart the United States within 60 days. *Id.* at 7–8. In its order, the BIA notified the Petitioner that should she fail to voluntarily depart, she "shall be removed as provided in the Immigration Judge's order." *Id.* at 8. Petitioner did not voluntarily depart, which converted

2

the voluntary departure to an order of removal on or about March 21, 2016. *See id*. at 17. In April of 2016, the DHS placed Petitioner on an OSUP. *See* dkt. 1-4.

On May 16, 2017, Petitioner's husband, who is a U.S. citizen, filed a petition for alien relative on her behalf. Dkt. 1 ¶ 31. Petitioner subsequently filed applications for readmission after deportation and for a waiver of her unlawful presence. *Id.*, ¶¶ 34–35.

While meeting with the U.S. Citizenship and Immigration Services on November 19, 2025, a Supervisory Detention and Deportation Officer with U.S. Immigration and Customs Enforcement ("ICE") issued to Petitioner a Form I-200 warrant for her arrest and a Form I-205 Warrant of Removal/Deportation. Dkt. 1 ¶ 33; dkt. 16-1 at 17. However, Petitioner was not served with a Notice of Revocation of her OSUP (Form I-860) or granted an informal interview. Dkt. 1 ¶ 33. As previously noted, Petitioner was subsequently detained in Clark County Jail prior to her deportation to Guatemala, following which she was returned to our judicial district.

**II. Legal Standard**

A federal court may issue a writ of habeas corpus when the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Three sources of law govern our analysis of the instant petition.

First, the Attorney General is required to detain an alien who has been ordered removed for 90 days. 8 U.S.C. § 1231(a)(1). "If the alien does not leave or is not removed within the [90-day] removal period, the alien, pending removal, shall be subject to supervision under regulations prescribed by the Attorney General." 8 U.S.C. § 1231(a)(3). Noncitizens who have been ordered removed for certain specified reasons may be released, subject to supervision, at the Attorney General's discretion. 8 U.S.C. § 1231(a)(6). Federal regulations specify that ICE may release individuals and place them on an OSUP only if they "demonstrate[ ] to the satisfaction of the

3

Attorney General . . . that his or her release will not pose a danger to the community or to the safety of other persons or to property or a significant risk of flight pending such alien's removal." 8 C.F.R. § 241.4(d); *see also id.* § 241.4(e)(6).

Second, federal regulations prescribe procedures for revoking an OSUP and for returning a removable noncitizen to custody. If the noncitizen "violates the conditions of release," she "will be notified of the reasons for revocation" of release, returned to custody, and "afforded an initial informal interview promptly after" return to custody so she may have "an opportunity to respond to the reasons for revocation stated in the notification." 8 C.F.R. § 241.4(l)(1).

Alternatively, § 241.4(l)(2) provides that:

> The Executive Associate Commissioner shall have authority, in the exercise of discretion, to revoke release and return to Service custody an alien previously approved for release under the procedures in this section. A district director may also revoke release of an alien when, in the district director's opinion, revocation is in the public interest and circumstances do not reasonably permit referral of the case to the Executive Associate Commissioner. Release may be revoked in the exercise of discretion when, in the opinion of the revoking official:
>
> i. The alien violate[d] any condition of release;
> ii. It is appropriate to enforce a removal order or to commence removal proceedings against an alien; or
> iii. The conduct of the alien, or any other circumstance, indicates that release would no longer be appropriate.

*Id.* Section 241.4(l)(3) provides for additional reviews to occur following re-detention.

Third, the Administrative Procedure Act requires federal courts to "hold unlawful and set aside agency action" that is found to be:

> A. arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;
>
> B. contrary to constitutional right, power, privilege, or immunity; [or]
>
> C. in excess of statutory jurisdiction, authority, or limitations, or short of statutory right.

4

5 U.S.C. § 706(2). "[C]ourts have consistently demanded governmental compliance with administrative regulations designed to safeguard individual interests." *Martinez Camargo v. I.N.S.*, 282 F.3d 487, 491 (7th Cir. 2002); *see also United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 267–68 (1954) ("We think the petition for habeas corpus charges the Attorney General with precisely what the regulations forbid him to do: dictating the Board's decision. [W]e object to the Board's alleged failure to exercise its own discretion, contrary to existing valid regulations."). ICE is "required to follow [its] own regulations . . . including those that govern exercises of an agency's discretion." *Zelaya Diaz v. Rosen*, 986 F.3d 687, 690 (7th Cir. 2021); *see also K.E.O. v. Woosley*, 2025 WL 2553394, at *3 (W.D. Ky. Sept. 4, 2025) ("Based upon the record provided, no reasons were provided by ICE and no informal interview promptly occurred. . . . ICE's failure to follow their own regulations violate the *Accardi* doctrine and K.E.O.'s procedural due process rights."); *N.A.L.R. v. Bondi, et al.*, Case No. 4:25-cv-00192-SEB-KMB, 2025 WL 2987239, at *3 (S.D. Ind. Oct. 23, 2025) (same).

### III. Analysis

The parties do not dispute that Petitioner is subject to a final order of removal and her detention is authorized by 8 U.S.C. § 1231(a). However, Petitioner contends that her current confinement is unlawful because the government did not follow its own procedures set forth in § 241.4(l) to revoke her release when she was arrested and re-detained on November 19.

Respondents advance three responses to Petitioner's claims, which we address below.[1]

#### A. Jurisdiction

Respondents maintain that 8 U.S.C. § 1252(g) precludes judicial review of this petition. Dkt. 16 at 3. Section 1252(g) states that "no court shall have jurisdiction to hear any cause or claim

---

[1] The Court does not address the parties' arguments regarding Petitioner's pending immigration applications because they exceed the scope of our habeas review. *See* 28 U.S.C. § 2241(c)(3).

by . . . any alien arising from the decision or action by [ICE] to . . . execute removal orders against any alien." This argument by Respondents is unavailing.

Respondents misconstrue Petitioner's requested relief as "a stay from removal," citing caselaw establishing that § 1252(g) precludes district courts from reviewing decisions to execute removal orders. Dkt. 16 at 3–4. However, as the Seventh Circuit has previously held, "nothing in § 1252(g) precludes review of the decision to confine." *Carrera-Valdez v. Perryman*, 211 F.3d 1046, 1047 (7th Cir. 2000). This is true because § 1252(g) bars a district court's judicial review of only "the three listed decisions or actions." *E.F.L. v. Prim*, 986 F.3d 959, 964 (7th Cir. 2021) ("[sec 1252(g)] does not sweep broadly; only challenges to the three listed decisions or actions—to commence proceedings, adjudicate cases, or execute removal orders—are insulated from judicial review.") (citing *Reno v. American-Arab Anti–Discrimination Comm. (AAADC)*, 525 U.S. 471, 482 (1999)); *Dep't of Homeland Sec. v. Regents of the Univ. of California,* 591 U.S. 1, 19 (2020) (rejecting as "'implausible'" any claim that § 1252(g) covers "all claims arising from deportation proceedings." (quoting *AAADC*, 525 U.S. at 482)); *Parra v. Perryman*, 172 F.3d 954, 957 (7th Cir. 1999) ("Parra. . . by contrast, did not ask the district court to block a decision 'to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.' His claim concerns detention while the administrative process lasts, and it may be resolved without affecting pending proceedings. Section 1252(g) therefore does not foreclose review.") (emphasis added). Accordingly, we hold that we have jurisdiction over Petitioner's petition because, and to the extent that it challenges her unlawful detention.

### B. The Lawfulness of Petitioner's Detention Pursuant to 8 U.S.C. § 1231

Respondents next argue that Petitioner is lawfully detained pursuant to the 90-day mandatory detention provision in § 1231(a)(1), given that 90 days have not passed since she was

arrested and re-detained on November 19, 2025. Dkt. 16 at 7. Petitioner contends that this mandatory detention does not apply to her because she was placed on an OSUP in April of 2016. Respondents are required first to revoke her OSUP pursuant to the prescribed regulations before re-detaining her prior to her deportation. Dkt. 23 at 2.

The record before us is unclear as to whether Petitioner was actually detained for the full 90 days prior to the issuance of the OSUP.  In any event, the statute makes it clear that an OSUP "shall" be issued only after the expiration of the 90-day period. *See* 8 U.S.C. § 1231(a)(3) ("If the alien does not leave or is not removed within the [90-day] removal period, the alien, pending removal, shall be subject to supervision under regulations prescribed by the Attorney General."). Thus, the fact that the OSUP was issued in April of 2016 confirms to Petitioner's contention that the 90-day removal period has since expired. Further, contrary to Respondents' arguments, the fact that Petitioner was detained "for purposes of removing her" does not attribute the time in detention into the 90-day removal period. *See* dkt. 16 at 9. The regulations to revoke an OSUP also provide for revocation when "[i]t is appropriate to enforce a removal order or to commence removal proceedings against an alien." § 241.4(l)(2). This suggests that § 1231(a)(1) is not the only grounds for detaining a noncitizen to wit, to execute a final removal order. Thus, the record does not show that Petitioner's re-detention on November 19, 2025 fell within the 90-day mandatory detention provision in § 1231(a)(1).

C. **The Lawfulness of Petitioner's Detention Pursuant to 8 C.F.R**. **§ 241.4(l)(2)**

Finally, Respondents argue that Petitioner's detention satisfies the requirements of § 241.4(l)(2) because ICE exercised its discretion to determine that "it was appropriate to enforce a removal order." Dkt. 16 at 10. In contrast to revocations under 241.4(l)(1), Respondents maintain that ICE is not required to provide "notice, explanation, or an interview for the alien to respond."

7

Dkt. 16 at 10. Moreover, Respondents have provided a supplemental notice establishing that one Raymond Hernandez, Jr. served Petitioner with a "Notice of Revocation of Release" on December 31, 2025. Dkt. 27-2. The Notice states: "Be advised that because of your Final Order of removal issued by Immigration Judge, as of 01/20/2016 your parole is hereby revoked." *Id.* This position, however, fails to address two important issues.

First, Respondents have not provided any proof that Mr. Hernandez was an official authorized to revoke Petitioner's OSUP, according to § 241.4(l)(2). He does not appear to be the "Executive Associate Commissioner" or a "district director." *See* § 241.4(l)(2). In addition, it is entirely unclear what Mr. Hernandez's notice purported to revoke. The Notice states that Petitioner was "paroled into the United States per Section 212(d)(5)" and that her parole was revoked. However, nowhere in the record before us does it show that Petitioner was ever granted parole under this section, relating to humanitarian parole. Thus, the Notice falls short of establishing compliance with the government's own regulations for revoking Petitioner's OSUP. *See Accardi*, 347 U.S. at 268 (when the government promulgates regulations "with the force and effect of law," agencies are bound to follow their own "existing valid regulations").

In addition, citing § 241.4(l) and the Due Process Clause, other courts have held that revocations under both 8 C.F.R. § 241.4(l)(1) and (l)(2) require notice upon revocation and a prompt informal interview. *See C.M. v. Maples,* Case No. 4:25-cv-00198-TWP-KMB, 2025 WL 3091623, at *4 (S.D. Ind. Nov. 5, 2025); *see also Cedeno-Gonzalez v. Noem*, Case No. 2:25-cv-00473-JPH-MJD, 2025 WL 2999583, at *9 (S.D. Ind. Oct. 27, 2025) (ordering respondents to grant petitioner an informal interview upon finding that petitioner was not granted an informal interview after he received notice that his OSUP was revoked pursuant to 8 C.F.R. § 241.4(l)); *K.E.O. v. Woosely*, 2025 WL 2553394, at *5 (stating that "(l)(2) overlaps with (l)(1) with respect

8

to the circumstances when a violation results from a condition of the OSUP as the basis for revoking release [and] '[t]his overlap belies the Government's argument that these are two separate processes, and suggests that paragraph (l) sets forth a unified set of procedures for the revocation of removal.'" (quoting *Zhu v. Genalo*, 2025 WL 2452352 (S.D.N.Y. Aug. 26, 2025)); *Ceesay v. Kurzdorfer*, 781 F. Supp. 3d 137, 164–65 (W.D.N.Y. 2025) (explaining that courts have interpreted §§ 241.4(l) as requiring an informal interview upon the revocation of release); *Orellana v. Baker*, 2025 WL 2444087, at *5 (D. Md. Aug. 25, 2025) (explaining that the regulations in 8 C.F.R. § 241.4 "plainly provide due process protections to aliens following the removal period as they are considered for continued detention, release, and then possible revocation of release by, among other things, . . . requiring certain procedural safeguards upon revocation to allow a noncitizen to have any opportunity to be heard to contest the reasons for revocation, including informal interviews and custody reviews."). Respondents provide no evidence that Petitioner received such a prompt, informal interview after she was served with notice on December 31, 2025.

Accordingly, we find that Petitioner established that she has been subject to an OSUP since April 2016, and that it has not been revoked by an authorized official or according to the process the law prescribes. Applying the APA and the *Accardi* doctrine, we hold that the revocation of Petitioner's release and her detention are contrary to law.

### D. Proper Remedy

In recent months, we note that a majority of federal district courts to confront issues similar to those set out in this petition have ordered the respondents to effect the immediate release of petitioners from detention. In granting habeas relief, as in every other area of the law, "the remedy should be appropriate to the violation." *Waller v. Georgia*, 467 U.S. 39, 50 (1984). In the pending case, the government possesses the statutory authority to detain Petitioner but failed to apply the

9

proper procedures for revoking its order of supervision applicable to Petitioner. As the Court ruled in *Ceesay,* "Courts have repeatedly recognized the importance of process, particularly where, as here, a person's freedom hangs in the balance." 781 F. Supp. 3d at 157 (citing *Accardi*, 347 U.S. at 268). Thus, the government is forthwith ordered to grant Petitioner the process she was due from the beginning and, if it is unable to do so in the expeditious manner required, to release her.[2]

### IV. Conclusion

Petitioner's motion to hold the Respondents in contempt, dkt. [25], is **denied as moot**.

Petitioner's petition for a writ of habeas corpus is **granted** in part insofar as follows:

Respondents, **by no later than 5:00 p.m. on January 8, 2026**, must file documentation with the Court showing that an expressly authorized official pursuant to 8 C.F.R. § 241.4(l)(2) has taken the necessary steps to revoke Petitioner's OSUP, or if Respondents are unable to take such action in the allotted timeframe to release Petitioner from detention, subject to her most recent order (and conditions) of supervision.

Final judgment shall not issue at this time.

**IT IS SO ORDERED.**

Date: 1/6/2026

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

---

[2] Were the Court to order Petitioner's immediate release, the government could of course take the proper steps to revoke Petitioner's order of supervision and redetain her. However, the more sensible approach is for the Court to order the government to comply with its regulations and release her if it cannot otherwise act in a timely manner. *See Waller*, 467 U.S. at 50 ("If, after a new suppression hearing, essentially the same evidence is suppressed, a new trial presumably would be a windfall for the defendant, and not in the public interest."); *see also Jackson v. Denno*, 378 U.S. 368, 393–94 (1964) ("New York . . . should first provide Jackson with that which he has not yet had and to which he is constitutionally entitled—an adequate evidentiary hearing productive of reliable results concerning the voluntariness of his confession. It does not follow, however, that Jackson is automatically entitled to a complete new trial including a retrial of the issue of guilt or innocence."); *Barrios v. Ripa*, No. 1:25-CV-22644, 2025 WL 2280485, at *8 (S.D. Fla. Aug. 8, 2025) ("Even if Petitioner could establish that Respondents violated their OSUP revocation procedures, the Court finds that Petitioner's release from detention . . . would not be appropriate. . . . Instead, the Court could order Respondents to provide Petitioner with a new Notice signed by the appropriate official and afford Petitioner a more robust interview.").

Distribution:

Rania Attum
rania@attumlaw.com

R. Jeffrey Lowe
KIGHTLINGER & GRAY, LLP (New Albany)
jlowe@k-glaw.com

Shelese M. Woods
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
shelese.woods@usdoj.gov